J. CURTIS EDMONDSON (SBN 236105)
*jcedmondson@edmolaw.com*
**LAW OFFICES OF J. CURTIS EDMONDSON**
9999 SW Wilshire St., Suite 216
Portland, OR 97225
Tel.: 503-336-1749
Fax: 503-482-7418

Attorneys for Plaintiffs
JERRY A. SPOLAR and TONNY JILL WILLIAMSON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERRY A. SPOLAR, an individual; and TONNY JILL WILLIAMSON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company; UNREALISTIC IDEAS, LLC, a Delaware limited liability company; PIECE OF WORK PRODUCTIONS, LLC, a California limited liability company; ARCHIE GIPS, an individual; WHITNY BRAUN, an individual; JAMES BRAUN, an individual; and DOES 1 through 25, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT – DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1

# INTRODUCTION

1. This lawsuit is the second lawsuit filed by Plaintiffs against the Defendants in this Court. This lawsuit, as well as the first lawsuit, arose from the common facts surrounding Defendants' theft of Plaintiffs' ideas and creative concepts for a television program about Plaintiffs' work of over 24 years to obtain, authenticate, and establish the provenance of the 131st and last known photographic image of President Abraham Lincoln, which was taken on Lincoln's death bed after he was shot by John Wilkes Booth (the "Lincoln Program"). (See Case #2:20-cv-08837-SVW-MAA; Judgement entered in favor of Plaintiffs and against Defendants August 27, 2021.)

2. Plaintiffs previously communicated their concept and the information necessary to produce the Lincoln Program to Defendants under the protection of Non-Disclosure Agreements and with the Defendants' express and implied agreement that Defendants would not disclose, divulge, or exploit Plaintiffs' ideas and concepts without compensating Plaintiffs and without Plaintiffs' consent. Instead, Defendants fraudulently informed Defendants that their concept was valueless and that no television networks were interested in producing a program based on Plaintiffs' concept.

3. In violation of their Agreements with Plaintiffs, Defendants then secretly exploited Plaintiffs' concept by producing a program that began airing on the Discovery Network on October 4, 2020, and continues to be available, entitled "Undiscovered: The Lost Lincoln," using Plaintiffs' concept but without paying Plaintiffs a penny. In this lawsuit, Plaintiffs seek to stop the unauthorized and repeated copyright infringement of the copyright registrations of Plaintiffs by Defendants.

# PARTIES

4. Plaintiff Tonny Jill Williamson ("Williamson") is an individual and a resident of St. Augustine, Illinois.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

5. Plaintiff Jerry A. Spolar ("Spolar") is an individual and a resident of Putnam, Illinois.

6. Defendant Discovery Communications, LLC ("Discovery") is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business of 230 Park Avenue, New York, New York 10003. Discovery is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that Discovery operates and conducts business in this judicial district.

7. Defendant Unrealistic Ideas, LLC ("Unrealistic") is a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506. Unrealistic is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that Unrealistic operates and conducts business in this judicial district.

8. Defendant Piece of Work Productions, LLC ("PWP") is a limited liability company organized and existing under the laws of the state of California with a principal place of business of 901 West Alameda Avenue, Suite 102, Burbank, California 91506. PWP is qualified to do business in the state of California and Plaintiffs are informed and believe, and on that basis allege, that PWP operates and conducts business in this judicial district. Plaintiffs are informed and believe, and thereon allege, that PWP is a wholly owned subsidiary of Defendant Unrealistic.

9. Defendant Whitny Braun ("W. Braun") is an individual who, upon information and belief is a resident of Downey, California. Plaintiffs are informed and believe, and thereon allege, that W. Braun is, and at all relevant times has been, an employee and agent of Defendants Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of her authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of W. Braun as herein alleged.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

10.     Defendant James Braun ("J. Braun") is an individual who, based on Plaintiffs' information and belief is a resident of Downey, California. Plaintiffs are informed and believe, and thereon allege, that J. Braun is, and at all relevant times has been, an employee and agent of defendants Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of his authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of J. Braun as herein alleged.

11.     Defendant Archie Gips ("Gips") is an individual who, based on Plaintiffs' information and belief is a resident of Los Angeles, California.  Plaintiffs are informed and believe, and thereon allege, that Gips is, and at all relevant times has been, the President of defendant Unrealistic, and an employee and agent of Unrealistic and PWP, and, in doing the acts herein described and referred to, was acting in the course and within the scope of his authority as agent and employee, and in the transaction of the business of the employment or agency. Unrealistic and PWP are, therefore, liable to Plaintiffs for the acts of Gips as herein alleged.

12.     Plaintiffs are informed and believe and thereon allege that Defendants DOES 1 through 25, inclusive, are other as of yet unidentified parties who have participated in and committed the wrongful acts alleged herein. The true names of Defendants 1 through 25 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint with their true names and capacities once ascertained.

13.     Plaintiffs are informed and believe, and thereon allege, that there exists, and at all times since the formation of PWP has existed, a unity of interest and ownership between Defendants W. Braun, J. Braun, Gips, and Unrealistic and Defendant PWP, such that any individuality and separateness between Defendants W. Braun, J. Braun, Gips, and Unrealistic and Defendant PWP has ceased, and Defendant PWP is the alter ego of Defendants W. Braun, J. Braun, Gips, and Unrealistic in that Defendant PWP is, and at all times herein mentioned was, a

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

mere shell, instrumentality, and conduit through which Defendants W. Braun, J. Braun, Gips, and Unrealistic carried on their television production business, exercising complete control and dominance of such business to such an extent that any individuality or separateness of Defendant PWP and Defendants W. Braun, J. Braun, Gips, and Unrealistic does not, and at all times since the formation of PWP did not, exist.

14. Plaintiffs are informed and believe, and thereon allege, that adherence to the fiction of the separate existence of PWP as an entity distinct from Defendants W. Braun, J. Braun, Gips, and Unrealistic would permit an abuse of the limited liability company privilege and would sanction fraud or promote injustice in that Defendants W. Braun, J. Braun, Gips, and Unrealistic would be permitted to continue their unjust exploitation of Plaintiffs' Lincoln Program concept and to shelter and conceal the unjustly obtained proceeds thereof.

15. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto each of the Defendants was the agent, employee, alter-ego, affiliate, officer, director, manager, and/or principal of the other Defendants and was at all times relevant hereto acting within the course and scope of such agency relationship, employment, alter-ego relationship or affiliation.

16. Plaintiffs are informed and believe, and based thereon allege, that each Defendant actively participated in, or subsequently ratified, each of the acts and conduct alleged herein with full knowledge of all the facts and circumstances attendant thereto, including the rights of the Plaintiffs and the damages sustained by Plaintiffs as a result of the acts and conduct alleged herein.

## JURISDICTION AND VENUE

17. This is a civil action arising primarily under the Copyright Act, 17 U.S.C § 101, *et seq.*, for copyright infringement.

18. This Court has jurisdiction over the subject matter of Plaintiffs' claims pursuant to 28 U.S.C. § 1338 (general jurisdiction for copyright infringement), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has general

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

personal jurisdiction over Defendants, as Defendants reside in this judicial district and do business in this judicial district, the claims asserted herein arose in this judicial district, and this Court has long arm jurisdiction over Defendants pursuant to California Civil Procedure §410.10, et seq.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in the Central District of California.

## RELEVANT FACTS

20. Plaintiffs are the owners of an ambrotype photograph that is believed to be a previously unknown photograph of Abraham Lincoln, the 16th President of the United States ("Lincoln Ambrotype"). An ambrotype is a type of photograph employed in the 1850s and 1860s, which is taken on glass, sometimes ruby glass, and uses a light-sensitive silver colloid emulsion spread on the glass to capture and preserve a photographic image thereon.

21. There are only 130 known and authenticated photographs of President Lincoln. The Plaintiffs' Lincoln Ambrotype is the 131st, and was taken the night of April 14, 1865, as President Lincoln lay mortally wounded after he had been shot by John Wilkes Booth.

22. Plaintiff Spolar acquired the Lincoln Ambrotype on December 8, 1996. Since that time, Plaintiffs have spent thousands of hours and hundreds of thousands of dollars authenticating the Lincoln Ambrotype and establishing its provenance. Plaintiffs have consulted, worked with, and hired dozens of experts around the United States to examine forensically and authenticate the Lincoln Ambrotype and its historical provenance, developing an extensive network of forensic, authentication, technological, historical, and medical experts who executed non-disclosure agreements ("NDAs") in favor of Plaintiffs. Plaintiffs' work product included detailed reports, and analyses, scientific analytical drawings, annotated images, and overlays of the Lincoln Ambrotype and features thereon, experimental procedures and results, and related expert and consultant write-ups. Plaintiffs also commissioned experts to create images of their Lincoln Ambrotype using various duplication technologies to enable detailed analyses of various

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

photogrammetric and other aspects of the Lincoln Ambrotype, and commissioned their experts to create a duplicate copy of the Lincoln Ambrotype using photographic techniques identical to those used on April 14, 1865, when the original ambrotype was created.

23. Plaintiffs were diligent and careful to ensure that all those who came into contact with the Lincoln Ambrotype understood that Plaintiffs intended to keep their work confidential. Before meaningfully discussing their work or the Lincoln Ambrotype with any third party, Plaintiffs insisted that each such party execute a NDA and/or a confidential work-for-hire agreement. Plaintiffs' experts and consultants signed and agreed to abide by their respective NDAs and/or confidential work-for-hire agreements, and to deliver all work product to the exclusive custody, possession, and control of Plaintiffs.

24. Among the experts with whom Plaintiffs worked, and who executed 6 NDAs and/or related agreements in favor of Plaintiffs, are: (i) Mark Osterman ("M. Osterman"), an expert in nineteenth century photographic techniques and authentication; (ii) France Osterman, ("F. Osterman"), an expert in nineteenth century photographic techniques and authentication; (iii) Michael Hagar ("Hagar"), an expert in museum quality printing of old photographs; and (iv) Stanley Burns ("S. Burns"), a medical expert.

25. Plaintiffs spent over 20 years and hundreds of thousands of dollars investigating the Lincoln Ambrotype, assembling, and organizing these materials, and creating the concept for the Lincoln Program.

**DEFENDANTS' THEFT OF THE LINCOLN PROGRAM**

26. In early 2018, Plaintiffs began to pitch their Lincoln Program concept to television studios, producers, and their representatives. In or about February 2018, Plaintiffs were referred to W. Braun, the daughter of firearms historian and gunsmith J. Braun. W. Braun represented to Plaintiffs that she had an existing relationship with Unrealistic, a documentary film production company.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

27. On February 16, 2018, Plaintiffs met with Unrealistic representatives W. Braun, J. Braun, and Gips, the President of Unrealistic, in Los Angeles, California, and presented their creative ideas and concept for the Lincoln Program. In connection with their presentation, Plaintiffs provided the Unrealistic representatives with detailed information regarding their authentication of the Lincoln Ambrotype, and the identities of certain of their authenticating experts including M. Osterman, F. Osterman, Hagar, and S. Burns.

28. Prior to the February 16, 2018 presentation, W. Braun, J. Braun, and Gips represented to Plaintiffs that they, personally, and Unrealistic would maintain the confidentiality of Plaintiffs' concept and work product related to the Lincoln Program project, including the identities of the experts consulted with and retained by Plaintiffs in connection therewith, and that they would not use or disclose such information without Plaintiffs' consent.

29. Also prior to the presentation occurring during the February 16, 2018 meeting, W. Braun, J. Braun, and Gips, signed NDAs in favor of Plaintiffs, true and correct copies of which are attached hereto as Exhibits A – C, respectively. Plaintiffs further informed W. Braun, J. Braun, and Gips that each of their authenticating experts had agreed to maintain the confidentiality of their work on the Lincoln Program project, and had signed NDAs and/or work-for-hire agreements agreeing to maintain the confidentiality of their work with respect to the Lincoln Program project.

30. On February 16, 2018, Plaintiffs further presented their ideas and concept for the Lincoln Program, via video conference, to W. Braun, J. Braun, Gips, and to representatives of National Geographic, including National Geographic's executives, Igal Svet ("Svet"), and Tim Pastore. All of the National Geographic representatives agreed to protect the confidentiality of Plaintiffs' information. The National Geographic representatives expressed strong interest in producing the Lincoln Program.

31. Plaintiffs communicated their ideas and creative concepts for the Lincoln Program concept to W. Braun, J. Braun, Gips, Unrealistic, and Svet pursuant to the following terms:

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

      a.    That Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

      b.    That W. Braun, J. Braun, Gips, Unrealistic, and Svet would not disclose, divulge or exploit Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent; and

      c.    That, by accepting the Plaintiffs' disclosure of the Lincoln Program concept, W. Braun, J. Braun, Gips, Unrealistic, and Svet accepted and agreed to abide by the foregoing terms.

32.    Also on February 16, 2018, Plaintiffs Williamson, Spolar and Unrealistic entered into identical written agreements titled: Unrealistic Ideas, LLC Artist Holding Agreements ("Artist Holding Agreement"), a true and correct copy of which signed by Williamson is attached hereto as Exhibit D. The Artist Holding Agreements required Plaintiffs to work exclusively with Defendants without compensation, and provide, *inter alia*, that "[t]he parties … agree to work together to develop the [Lincoln Program] Project and set up with a Network" (Artist Holding Agreement, ¶ 1), and that "[f]ees for [Plaintiff Williamson] will be negotiated in good faith upon sale of Project to Cable or Primetime Network ("collectively, "Network")." *Id*., ¶ 3.

33.    On or about February 20, 2018, Plaintiffs received an e-mail message from Defendant W. Braun asking for verification of a typed list of Plaintiffs' experts and consultants, which W. Braun alleged Plaintiff Williamson had given to her, which was not true. Rather, W. Braun had misappropriated the information from Plaintiffs' materials during the Los Angeles visit. Williamson expressly reminded W. Braun of the signed NDA, demanded return of the materials, and reminded W. Braun of her obligation not to contact Plaintiffs' experts without Plaintiffs' permission. W. Braun refused to return the list.

34.    Shortly before March 6, 2018, Defendants W. Braun, J. Braun, and Gips represented to Plaintiffs that National Geographic was not interested in the Lincoln Program project.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

9

35. Prior to June 1, 2018, W. Braun, J. Braun, and Gips proposed a meeting to present Plaintiffs' Lincoln Program project to the History Channel executive producers Sean Boyle ("Boyle") and Kristen Burns ("K. Burns") in June 2018. Prior to meeting with the History Channel, Unrealistic's representatives W. Braun and J. Braun represented in writing that the proposed History Channel project was worth "7 figures."

36. On or about May 30, 2018, J. Braun called Plaintiff Williamson numerous times, and asserted by text message that the proposed deal with History Channel was worth "7 figures," meaning millions of dollars. A true and correct copy of this text message is attached hereto as Exhibit E (message labeled "3").

37. Also on or about May 30, 2018, W. Braun also texted Plaintiff Williamson that Sean Boyle of History Channel would green-light a seven figure production budget upon seeing the presentation. A true and correct copy of this text message is attached hereto as Exhibit F (see message labeled "79").

38. On June 1, 2018, Plaintiffs and Unrealistic representatives W. Braun, Gips, and Paul Sadowski ("Sadowski") presented Plaintiffs' Lincoln Program concept to History Channel representatives Boyle and K. Burns. Plaintiffs obtained signed NDAs from each of these History Channel representatives and Sadowski before presenting their Lincoln Program project. True and correct copies of the Boyle, K. Burns, and Sadowski NDAs are attached hereto as Exhibits G, H, and I, respectively.

39. Plaintiffs communicated their ideas and creative concepts for the Lincoln Program concept to W. Braun, Gips, Sadowski, Boyle and K. Burns pursuant to the following terms:

    a. That Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

    b. That W. Braun, Gips, Sadowski, Unrealistic, History Channel, Boyle and K. Burns would not disclose, divulge or exploit Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent; and

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

  c. That, by accepting the Plaintiffs' disclosure of the Lincoln Program concept, W. Braun, Gips, Sadowski, Unrealistic, History Channel, Boyle and K. Burns accepted and agreed to abide by the foregoing terms.

40. Plaintiffs' presentation of their Lincoln Program concept to the History Channel was well-received, and the History Channel representatives stated that the History Channel wanted to proceed with Plaintiffs' Lincoln Program project.

41. Despite Unrealistic's representative J. Braun's prior written representation that the History Channel project was worth "7 figures," within days following the meeting with the History Channel, Defendants attempted to deprive Plaintiffs of the value of their Lincoln Program concept by offering to purchase all of Plaintiffs' rights in and to the Lincoln Program for $2,000. Plaintiffs rejected this unreasonable offer.

42. Plaintiffs are informed and believe, and thereon allege, that following their unsuccessful attempt to purchase Plaintiffs' rights in the Lincoln Program Project for a fraction of their worth, Defendants proceeded to simply steal the Lincoln program concept and Plaintiffs' work product related to the Lincoln Program project, and to produce the Lincoln Program without Plaintiffs' consent and without compensating Plaintiffs.

43. On or about August 6, 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun represented to Plaintiffs that the History Channel was not interested in the project, and that the Lincoln Program Project had no commercial value. Unrealistic falsely represented to Plaintiffs in writing that Gips and Unrealistic had "pulled the plug" on the Lincoln Program Project.

44. Plaintiffs are informed and believe, and thereon allege, that despite Defendants' representations regarding purported lack of interest in and value of the Lincoln Program project, Defendants proceeded with the project. Plaintiffs are further informed and believe that in or about August, 2018, Defendants Unrealistic, Gips, W. Braun, and J. Braun formed PWP as a vehicle for the production of a television program embodying and exploiting Plaintiffs' Lincoln Program concept and utilizing Plaintiffs' work product.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

45. Plaintiffs are informed and believe, and thereon allege, that in violation of their duties of confidentiality, Gips, J. Braun, W. Braun, Unrealistic, and PWP, and other agents of Defendants, began contacting Plaintiffs' experts and collaborators and working with them to produce a television program embodying and exploiting Plaintiffs' Lincoln Program concept, without notifying Plaintiffs.

46. Plaintiffs are informed and believe that, unbeknownst to Plaintiffs, during October 2018, Boyle left The History Channel and moved to The Discovery Channel in an executive producer role. Plaintiffs are further informed and believe, and thereon allege, that in May 2019 Svet left National Geographic and joined The Discovery Channel, also in an executive producer role, to work with at the Discovery Channel with Boyle.

47. Plaintiffs are informed and believe, and thereon allege, that in violation of her duty of confidentiality, on or about August 18, 2018, W. Braun posted confidential information regarding the Lincoln Program project online. Plaintiffs are further informed and believe that W. Braun continued to make unauthorized contact with Plaintiffs' confidential experts, including, without limitation, M. Osterman, F. Osterman, Hagar, and S. Burns, and to work with such experts in the production of a television program embodying Plaintiffs' Lincoln Program concept, including the filming of one or more of Plaintiffs' experts.

48. Other than disclosures pursuant to NDAs, Plaintiffs' experts and collaborators were known only to Plaintiffs. Plaintiffs are informed and believe that Defendant W. Braun used the list of Plaintiffs' experts that she had stolen from the February 17, 2018 meeting to contact Plaintiffs' experts, in violation of Defendants' representations to and agreements with Plaintiffs.

49. As a result of W. Braun's improper activities, Plaintiffs sent a cease and desist letter dated August 2, 2019 to Defendants Unrealistic and W. Braun, a true and correct copy of which is attached hereto as Exhibit J. Defendants Unrealistic and W. Braun failed to respond to the letter.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

50. Plaintiffs are informed and believe, and thereon allege, that Defendants continued to secretly contact and to work with Plaintiffs' experts, including, without limitation, M. Osterman, F. Osterman, Hagar, and S. Burns, in the production of a television program embodying Plaintiffs' Lincoln Program concept, in violation of their representations to and agreements with Plaintiffs.

51. Plaintiffs are further informed and believe that W. Braun gained the trust and confidence of Plaintiffs' experts and induced them to violate their NDAs and related agreements in favor of Plaintiffs by, among other things, offering monetary or other inducements and/or falsely representing that W. Braun was working with Plaintiffs on a book deal, when in fact W. Braun was stealing the Lincoln Program concept and using Plaintiffs' experts, including at least M. Osterman, F. Osterman, Hagar, and Burns, to create a television program to be aired on the Discovery Channel.

52. On or about January 21, 2020, Plaintiff caused another cease and desist letter to be sent to W. Braun, a true and correct copy of which is attached hereto as Exhibit K. Again, this letter was ignored.

53. Plaintiffs are informed and believe, and on that basis allege, that Boyle and Svet had moved to Discovery, and worked with the Defendants to produce a television program embodying Plaintiffs' Lincoln Program concept and work product, in continuing violation of Plaintiffs' rights. Consequently, Plaintiffs caused another cease and desist letter dated April 3, 2020 to be communicated to Boyle at Discovery, a true and correct copy of which is attached hereto as Exhibit L.

54. Defendants succeeded in their unlawful plan to steal the Lincoln Program from Plaintiffs. On September 14, 2020, Discovery announced the airing of documentary purportedly created by Defendants and titled "Discovery Presents Hidden Photo of Lincoln" or "Undiscovered: The Lost Lincoln," focused on the Lincoln Ambrotype, starring W. Braun (the "Discovery Program"). W. Braun and Gips were Executive Producers of the Discovery Program.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

The production was initially broadcast on October 4, 2020 on The Discovery Channel and continues to be available to subscribers of the Discovery Channel.

55. The Discovery Program was created by Defendants in violation of their agreements with Plaintiffs. The broadcast of the 2020 documentary created by Defendants, which began October 4, 2020 and continues to this day, has caused irreparable harm, and continues to cause irreparable harm, to the Plaintiffs' property and the value thereof.

56. The broadcast also falsely attributes W. Braun with having come up with the idea of the Lincoln Program and with conducting the research to authenticate the Lincoln Ambrotype, causing further damage and harm to Plaintiffs and Plaintiffs' reputation.

57. The Plaintiffs notes, narratives, presentations, and images produced by Plaintiffs' efforts (the "Protected Works") to authenticate the Lincoln Ambrotype constitute original material that is copyrightable as works of creative expression and the visual arts under the Copyright Act pursuant to 17 U.S.C. § 101.

58. The USCO approved two copyright applications for the Protected Works and registrations issued thereon as Copyright Registration No. VAu 1-385-469 with an effective date of January 23, 2020 ("Registration '469"), a copy of which is included herein as Exhibit O and Copyright Reg. No. VAu 1-409-534 with an effective date of August 21, 2020 (the "Registration '534"), a copy of which is included herein as Exhibit P.

59. At no time did Plaintiffs enter into a written agreement to agree to assign, transfer or license the Protected Works or either Registration '469 or '534 or to anyone, or any of the named Defendants.

60. Plaintiffs are therefore the sole owners of the exclusive rights to either Registration '469 or '534 or the Protected Works including the right to reproduce the work, distribute the work or to prepare derivatives pursuant to 17 U.S.C. § 106.

61. Both Registrations '469 and '534 contained slides with images and information which are either public domain or acknowledged to be created by others.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

62. Plaintiffs' copyright claims include the story behind the creation of the Lincoln Ambrotype, including the selection and arrangement of the slides for purposes of expressing and explaining the research completed in support of their conclusions related to the authenticity of the Lincoln Ambrotype.

63. Plaintiffs excluded from their copyright claims the unaltered, unedited image produced from the Lincoln Ambrotype which under US copyright law is public domain.

64. Plaintiffs did not exclude from their copyright claims images of the Lincoln Ambrotype, which they exclusively control access to.

65. Plaintiffs did not exclude from their copyright claims images produced by Plaintiffs, or those working under written agreement with Plaintiffs, from the Lincoln Ambrotype which were then further manipulated for analysis and authentication purposes.

66. Plaintiffs include a selection of images found in the Lincoln Program, submitted as Exhibit N, that are identical or substantially similar to copyright protected images and expressions found in Copyright Registrations '469 and '534.

67. The images in Exhibit N are screenshots presented in chronological order with the time of presentation during the program. See at least Exhibits N1-N144 herein.

68. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images of Plaintiffs' Lincoln Ambrotype in a frame and cover which are identical to or substantially similar to Plaintiffs' copyright protected images of the Lincoln Ambrotype with the goal of persuading viewers of the credibility of her presentation in support of her supposed authentication of the image. See at least Exhibits N1-N2, N5, N7, N21-N23, N27, N30, N37, N38, N44, N119, N120, N130 and N142-N144 herein.

69. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to Plaintiffs' copyright protected enhanced images that Plaintiffs produced to present their analysis of the eyes of the subject of the Lincoln Ambrotype. See at least Exhibits N3, N6, N17, N88-N91, and N94-N98 herein.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

70. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to Plaintiffs' copyright protected images that Plaintiffs produced to present their analysis of the "chalking of the cheeks" of the subject of the Lincoln Ambrotype. See at least Exhibits N65-N68, N71-N72, N77 and N132.

71. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to copyright protected images that Plaintiffs produced to present their analysis of the hair of the subject of the Lincoln Ambrotype. See at least Exhibit N93.

72. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images and text which are identical or substantially similar to copyright protected images and text that Plaintiffs produced to present the story of their analysis of the subject of the Lincoln Ambrotype and its authentication. See at least Exhibits N4, N8-N11, N13-N15, N18-N20, N25, N29, N31, N34-N36, N100, N103-N104, N107, N109, N111, N112, N117, N119, N122, N124-N129, N131-N132, and N134-N144.

73. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to copyright protected enhanced images that Plaintiffs produced to conduct their analysis of the subject of the Lincoln Ambrotype. See at least Exhibits N12, N16, N17, N24, N26, N28, N32-N36, N39, N41-N43, N45-N141.

74. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to copyright protected side-by-side images Plaintiffs produced to conduct and present their analysis of the subject of the Lincoln Ambrotype. See Exhibits N48-1, N48-2, N87, N100, N105, N113-N116, N121, N124, N129, N133 and N139.

75. Throughout the Lincoln Program, Defendant W. Braun continually presents unauthorized images which are identical or substantially similar to copyright protected images that Plaintiffs produced to present facial analysis of the subject of the Lincoln Ambrotype. See at

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

16

least Exhibits N34, N40-N43, N46-N53, N55-N58, N60-N63, N69, N73-N77, N84-N117, N119, N121-N129, N133-141.

## CLAIMS FOR RELIEF

## COUNT ONE: COPYRIGHT INFRINGEMENT

76. Plaintiffs repeat and re-allege each of the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

77. Plaintiffs indisputably hold Copyright Registrations '469 and '534 protecting the notes, analysis, narratives and images produced by Plaintiffs' efforts to authenticate the Lincoln Ambrotype.

78. Defendants' illicit copying of the Plaintiffs' copyright protected materials and preparation of unlawful derivative works based thereon, for use on and with Lincoln Program and its advertising/promotional materials, constitute copyright infringement pursuant to 17 U.S.C. § 501.

79. Defendants' acts of infringement have caused pecuniary loss to Plaintiffs in the form of lost profits.

80. Defendants are each jointly and severally liable for Plaintiffs' actual damages, including lost profits and all of Defendants' profits attributable to the acts of infringement pursuant to 17 U.S.C. § 504(a)-(b).

81. Defendants are each jointly and severally liable for injunctive relief and either actual damages or, upon Plaintiffs election, statutory damages pursuant to 17 U.S.C. § 504(b)–(c).

82. Defendants' unauthorized use of the Protected Works threatens Plaintiffs' exclusive right to prepare further derivative works therefrom, and monetary damages are insufficient to prevent Plaintiffs from suffering immediate and irreparable harm due to the continuing threat of ongoing infringement by Defendants for which Plaintiffs have no adequate remedy at law.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

83. Pursuant to Fed. R. Civ. P. 65 and 17 U.S.C. § 502, Plaintiffs seek preliminary and permanent injunctions enjoining Defendants from their ongoing acts of copyright infringement of the Protected Works.

84. Defendants either allowed the infringing acts to occur after having receiving multiple notices from Plaintiffs which demonstrate the infringement was willful and intentional. The infringement occurred in violation of federal copyright law, with knowledge that Plaintiffs had not authorized the copying and distribution, and with knowledge that no license or assignment had been granted by Plaintiffs.

85. Plaintiffs are entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

# PRAYER

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

86. A preliminary injunction enjoining Defendants, their employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns from:

    a. making copies of the Protected Works or the Defendants' unlawful derivative version of the Protected Works;

    b. preparing derivative works based on the Protected Works, including but not limited to the unlawful derivative Lincoln Program, for broadcast and distribution;

    c. distributing or selling copies of the Protected Works or Defendants' unlawful derivative Lincoln Program; and

    d. acting through any third party to undertake any of the above acts of infringement.

87. An order directing Defendants to return to Plaintiffs, or to destroy, all copies of the Protected Works and unlawful derivative Defendants' unlawful derivative Lincoln Program, whether digital or physical;

88. An order directing Defendants to file with the Court, with service upon Plaintiffs' counsel within thirty (30) days, after entry of such order a verified report setting forth the manner and form in which Defendants have complied with the preliminary and permanent injunctions and the orders of specific relief;

89. An order awarding Plaintiffs all damages sustained under 17 U.S.C. § 504(a)-(b) in an amount to be proven at trial including lost profits and profits of Defendants attributable to the acts of infringement;

90. An order awarding pre-and post-judgment interest;

91. A trial by jury; and

92. All other relief to which Plaintiffs may be entitled or the Court may deem appropriate.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

.

Dated:  September 13, 2023                    Respectfully submitted,

/s/ J. Curtis Edmondson
J. Curtis Edmondson
jcedmondson@edmolaw.com
Attorney for Plaintiffs

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  September 13, 2023                    Respectfully submitted,

/s/ J. Curtis Edmondson
J. Curtis Edmondson
jcedmondson@edmolaw.com
Attorney for Plaintiffs

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**