# EXHIBIT A

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of ___February 16___, 20_10_ ("Effective Date"), is between **Tommy J. Williamson** and **Jerry Spotar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _____ of ___Located at___ _corporation/position_ _____ _located at_ _____, (collectively the "Recipient").

**WHEREAS**, Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS**, Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE**, in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1. **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. **Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2. **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3. **Recipient Obligations.** The Recipient covenants and warrants to:

   (a) protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

   (b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)     immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)     fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)     be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.     **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)     prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)     reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.     **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.     **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.  **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.  **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.  **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10. **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11. **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12. **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

13. **Construction.** The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14. **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15. **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16. **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17. **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**

_Tonny J. Williamson_
**Tonny J. Williamson**

_Jerry Spolar_
**Jerry Spolar**

**RECIPIENT**

Whitney Braun
**Print Name:** _Whitney Braun_

Corporation: Unradiostar Eledras LLC

Position: Introductory Dipolar Williamson
to Archie Spolar
Unradiostar LLC

Page 4 of 4

13.     **Construction.** The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.     **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.     **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.     **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.     **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

        **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                              **RECIPIENT**

_____                          Whitny Braun
**Tonny J. Williamson**                           **Print Name:** _____

                                                 Corporation: Urealistic Eldeas LLC

**Jerry Spolar**                                  Position: Introduced Spolar & Williamson
                                                  to Archie Gips of
                                                  Unrealistic LLC

# EXHIBIT B

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of _February 16_, 20 _10_ ("Effective Date"), is between **Tommy J. Williamson** and **Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _Located at_ _____

_corporation / position_ _____ _____ _located at_ _____, (collectively the "Recipient").

**WHEREAS,** Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS,** Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE,** in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1. **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.

2. **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3. **Recipient Obligations.** The Recipient covenants and warrants to:

(a) protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)   immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)   fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)   be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.   **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)   prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)   reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.   **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.   **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.     **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.     **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.     **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.    **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.    **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.    **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

13. **Construction.** The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14. **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15. **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16. **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17. **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                         **RECIPIENT**

_____              _____

Tonny J. Williamson                          **Print Name:**
                                             JAMES BEAUN

                                             Corporation: _____

_____              Position: _____
Jerry Spolar

# EXHIBIT C

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT (the "Agreement"), dated as of _February 16_, 20 _10_ ("Effective Date"), is between **Tonny J. Williamson** and **Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _Located at_ _corporation/position_ _located at_ _(collectively the "Recipient")._

WHEREAS, Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

WHEREAS, Recipient desires to assure that the Confidential Information shall not be disclosed to others.

NOW, THEREFORE, in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1.    **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.

2.    **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3.    **Recipient Obligations.** The Recipient covenants and warrants to:

    (a)    protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

    (b)    not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)    immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)    fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)    be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.    **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)    prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)    reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.    **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.    **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.   **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.   **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.   **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.   **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.   **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.   **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

13.  **Construction.** The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.  **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement, and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.  **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.  **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.  **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

   **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**

*Tonny J Williamson*

Tonny J. Williamson

*Jerry Snoman*

Jerry Spolar

**RECIPIENT**

Print Name: ARCHIE GIPS

Corporation: UNREALISTIC IDEAS

Position: PRESIDENT

13.    **Construction.**  The parties acknowledge that each of them has had the benefit of legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel and that this Agreement shall be construed as if jointly drafted by the parties hereto.

14.    **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.    **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.    **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.    **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

          **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**                    **RECIPIENT**

_____                _____

Tommy J. Williamson                    Print Name: _ANTONINO CUTRARO_

_____

Jerry Spolar                           Corporation: _UnRealistic Ideas_

                                       Position: _Editor_

# EXHIBIT D

# Unrealistic Ideas, LLC - Artist Holding Agreement

| Dr. Tonny Williamson ("Artist") | Proposed Deal Terms as of February 16, 2018 |
|---|---|
| 1. Condition Precedent | This agreement ("Agreement") is conditioned upon Tony Williamson ("Artist") having the right and authority to enter into this deal memorandum ("Agreement") and to furnish his services herein, where he will appear on camera as himself in the Project with the working title "Abe Lincoln Photo Special" ("Project"), as defined below. Upon the conditions provided herein, Artist agrees to work with Producer to execute releases that are compliant with that Confidentiality and Nondisclosure Agreement supplied by Artist, a copy of which is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference. The parties further agree to work together to develop the Project and set up with a Network (as defined below). |
| 2. Exclusive Option Period | Unrealistic Ideas, LLC ("Producer") shall have the exclusive right to obtain financing from a third party television network or other production financier ("Network") through the date which is six (6) months (the "Attachment Period") following the producer's receipt of a signed copy of this Agreement for a proposed television project featuring Artist and his photograph of Abraham Lincoln as he gets the photo authenticated currently titled "Abe Lincoln Photo Special" (the "Project"). If upon expiration of the Attachment Period, Producer is engaged in continued meaningful discussions with a Network, the Attachment Period shall be automatically extended for a period of 30 days.<br><br>Producer shall be attached as the executive producer and production company of the Project and owner of all rights to such television project, subject to Producer's obligations to Artist hereunder. During the Attachment Period, Artist agrees not participate or appear in, or enter into any agreements relating to the development and/or participate in production of another unscripted television program and will not participate in any talk shows, news programs or any other entertainment media appearances in regards to his Abe Lincoln photograph unless authorized in writing in advance by Producer.<br><br>The parties agree that all entities and persons contacted regarding the Project shall be required to execute a Confidentiality and Nondisclosure Agreement that is in substantially the same form as the attached <u>Exhibit A</u>. |

| 3. Fees | Fees for Artist will be negotiated in good faith upon sale of Project to Cable or Primetime Network (collectively, "Network").<br><br>For clarity purposes there shall be no fee payable to Artist during the development phase with a network or otherwise before a series is commissioned by a network/distributer. |
|---|---|
| 4. Series Option & Obligation | In the event Producer produces a non-airable presentation substantially based on the Project ("Presentation") or a pilot (airable or non-airable) substantially based on the Project ("Pilot") and the Presentation or Pilot is sold to a Network, Producer shall have the option to engage Artist to render on-camera services for the series at a minimum of one Special and maximum of one season ("Season"). The length of the Season will be determined by the number of episodes ordered by the Network.<br><br>Artist agrees to render on-camera services in connection with the Project for a minimum of one Special and maximum of one Season. |
| 5. Exclusivity | During the term of this Agreement, Artist shall be exclusive to Producer in the same television platform as the Network (i.e., broadcast network, cable network, or first-run syndication) and internet platforms, and more specifically in unscripted/reality programming intended for all television and internet platforms.<br><br>Notwithstanding anything herein to the contrary, all rights to the Abe Lincoln Photo shall be owned and retained by Artist. |
| 6. Formal Agreement | In the event Producer obtains a commitment from a Network to further develop and/or produce the Project, Artist and Producer will enter into a more formal long form agreement incorporating entertainment industry standard terms and conditions recognized by the Network and Producer which shall be negotiated in good faith. Until such time and before the introduction of a more formal agreement this Artist Holding Agreement shall be binding on the parties and constitutes the entire agreement between the parties hereto and supersedes any and all understandings, written or oral, with respect to the subject matter hereof. |

AGREED TO AND ACCEPTED:

ARTIST

_Tonny Williamson_ (signature)

Tonny Willliamson

2-16-18 _____ (date)

PRODUCER
Unrealistic Ideas, LLC

_(signature)_

Archie Gips
President/Partner

2-16-18 _____ (date)

Page 2 of 2

# EXHIBIT E



# Extraction Report
Samsung SCH-U460

## SMS Messages (11)

⚠ * These details are cross-referenced from this device's contacts

| # | Folder | Party | Time | All timestamps | Status | Message | Deleted |
|---|--------|-------|------|----------------|--------|---------|---------|
| 1 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 00:19(UTC+0) | | Read | Tonny, I just found out that Randy told you and Jerry not to talk to anyone else. I have to tell you what the reality of all this is. I know it's frustrating waiting. What has happened is that Sean Boyle from the History Channel simply felt that it **Source file:** NO NAME/MSGS/MMS/1 : 0x11A62 (Size: 111677 bytes) NO NAME/MSGS/MMS/1469 : 0x16 (Size: 292 bytes) | |
| 2 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** | 5/30/2018 00:19(UTC+0) | | Read | Sorry... **Source file:** NO NAME/NVM/sms_wp_os/SMS_0424 : 0x7B (Size: 255 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x6AC (Size: 2621 bytes) | |
| 3 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 00:19(UTC+0) | | Read | He felt that it is his professional obligation to see the image <mark>before green lighting seven figures.</mark> **Source file:** NO NAME/NVM/sms_wp_os/SMS_0279 : 0xD7 (Size: 347 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x468 (Size: 2621 bytes) | |
| 4 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 00:20(UTC+0) | | Read | The reality with Randy is that he is a bit delusional and paranoid. When he found out that Sean wanted to meet you and see the image and he wasn't going he literally lost it. He thinks he owns all of this...literally. None of this would have happened without Whitny pitching the idea and writing up numerous treatments. **Source file:** NO NAME/MSGS/MMS/1 : 0x11BA0 (Size: 111677 bytes) NO NAME/MSGS/MMS/1472 : 0x16 (Size: 380 bytes) | |
| 5 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 01:33(UTC+0) | | Read | Randy thinks Whitny is his personal assistant. **Source file:** NO NAME/NVM/sms_wp_os/SMS_0109 : 0xA1 (Size: 293 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x1C0 (Size: 2621 bytes) | |
| 6 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 01:33(UTC+0) | | Read | I've been doing authenticating for years. The problem is that most historians and collectors don't want new items authenticated. That's why you and Jerry have had such a difficult time with this. **Source file:** NO NAME/MSGS/MMS/1 : 0x11CDE (Size: 111677 bytes) NO NAME/MSGS/MMS/1474 : 0x16 (Size: 237 bytes) | |
| 7 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 03:53(UTC+0) | | Read | This opportunity came about through a series of coincidences and probably won't happen again. **Source file:** NO NAME/NVM/sms_wp_os/SMS_0643 : 0xD0 (Size: 340 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0xA18 (Size: 2621 bytes) | |
| 8 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 03:56(UTC+0) | | Read | If you don't want to take it public and get the court of public opinion on your side, I understand. **Source file:** NO NAME/NVM/sms_wp_os/SMS_0106 : 0xD6 (Size: 346 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x1B4 (Size: 2621 bytes) | |
| 9 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 03:56(UTC+0) | | Read | However, if you do, I would really like to have a chance to talk with you. **Source file:** NO NAME/NVM/sms_wp_os/SMS_0619 : 0xBD (Size: 321 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x9B8 (Size: 2621 bytes) | |
| 10 | Inbox | **From** 5625474742 *Whitneys Dad Jim** **Direction:** Incoming | 5/30/2018 03:56(UTC+0) | | Read | I don't want to throw Randy under the bus, but he is actually sabotaging this because of his ego. **Source file:** NO NAME/NVM/sms_wp_os/SMS_0422 : 0xD6 (Size: 346 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x6A4 (Size: 2621 bytes) | |

# EXHIBIT F

| | | | | | |
|---|---|---|---|---|---|
| 78 | Outbox | To 5622432227 Whitny Braun* Direction: Outgoing | 5/30/2018 17:58(UTC+0) | Sent | Hi Whitny, I am working today so I wont be able to talk until this evening. My Dad, John, seems to be better today. I will know more about his condition@ this evening. Thank you for praying. We hope to be at the hotel tomorrow night. Could you text back the hotel info so that we can get a map/directions@? My old phone only holds so many messages and I dont think i have received all of yours yet. I will make more room. What is the fax # for the NDA? How@ should we dress for the presentation? Thank you, Whitny. Tonny@ Source file: NO NAME/MSGS/MMS/1 : 0x12217 (Size: 111677 bytes) NO NAME/MSGS/MMS/1481 : 0x17 (Size: 597 bytes) |
| 79 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/30/2018 18:02(UTC+0) | Read | 1/3 I so appreciate you being willing to do this. If Sean can see your presentation and meet you he'll be greenlighting a seven figure production budget and Source file: NO NAME/NVM/sms_wp_os/SMS_0204 : 0x110 (Size: 404 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x33C (Size: 2621 bytes) |
| 80 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/30/2018 18:02(UTC+0) | Read | 3/3 so he can make the good faith pledge that he is confident in moving forward and speak to you directly as its your photo. Source file: NO NAME/NVM/sms_wp_os/SMS_0144 : 0xF2 (Size: 374 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x24C (Size: 2621 bytes) |
| 81 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/30/2018 18:02(UTC+0) | Read | Please just let me know when its best for me to call you. I want to be sensitive to your time with your Dad. Source file: NO NAME/NVM/sms_wp_os/SMS_0482 : 0xE0 (Size: 356 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x794 (Size: 2621 bytes) |
| 82 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/30/2018 18:11(UTC+0) | Read | 1/3 Hi Tonny! Oh please know that precious John will be in my prayers. I will email you all of the information as well so you can print it and have a back Source file: NO NAME/NVM/sms_wp_os/SMS_0303 : 0x110 (Size: 404 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x4C8 (Size: 2621 bytes) |
| 83 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/30/2018 20:14(UTC+0) | Read | Hi Tonny...I just sent you the email with the details. The fax number is 818.450.0739 Source file: NO NAME/NVM/sms_wp_os/SMS_0528 : 0xC9 (Size: 333 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x84C (Size: 2621 bytes) |
| 84 | Outbox | To 5622432227 Whitny Braun* Direction: Outgoing | 5/30/2018 23:55(UTC+0) | Unsent | Hi Whitny, i faxed the NDA. I received your email. I am leaving the office. I will be free to talk @ 10 to night. (my time) if you have any questions o@r suggestions. If not, we will see you in Chicago. (as long as my Dad is stable). I will keep you posted. Thank you so much, Whitny. Tonny@ Source file: NO NAME/MSGS/MMS/1 : 0x124D4 (Size: 111677 bytes) NO NAME/MSGS/MMS/1487 : 0x17 (Size: 338 bytes) |
| 85 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 5/31/2018 14:45(UTC+0) | Read | Hi Tonny! Im at the airport and Paul our show runner has your check and the NDAs. I cant wait to see you! I hope the prayers for your Dad have been of some comfort. Ive been thinking about you. See you soon... Whit Source file: NO NAME/MSGS/MMS/1 : 0x1264B (Size: 111677 bytes) NO NAME/MSGS/MMS/1489 : 0x16 (Size: 258 bytes) |
| 86 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 6/1/2018 04:40(UTC+0) | Read | They dont have a room for them so we're getting them in next door at Fairfield Hotel Source file: NO NAME/NVM/sms_wp_os/SMS_0119 : 0xC8 (Size: 332 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x1E8 (Size: 2621 bytes) |
| 87 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 6/5/2018 02:29(UTC+0) | Read | Hi Tonny! Is there a time we could talk tomorrow or Wednesday to plan logistics? Archie and the network would like to make a proposal with a shooting schedule and are hoping for the first two weeks of August. I'd like to talk to you about your availability and your experts' availability. This is all starting to happen! Its going to be so fun! =Whit Source file: NO NAME/MSGS/MMS/1 : 0x12789 (Size: 111677 bytes) NO NAME/MSGS/MMS/1509 : 0x16 (Size: 414 bytes) |
| 88 | Inbox | From 5622432227 Whitny Braun* Direction: Incoming | 6/5/2018 14:08(UTC+0) | Read | Good morning Tonny! Is there a time you might be free to talk today or tomorrow? ~Whitny Source file: NO NAME/NVM/sms_wp_os/SMS_0190 : 0xCD (Size: 337 bytes) NO NAME/NVM/sms_wp_os/SMS_0000 : 0x304 (Size: 2621 bytes) |

# EXHIBIT G

05/30/2018  18:47     3098357801                    SPOLAR                              PAGE  02/05

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of ___6/1___, 20 _18_ ("Effective Date"), is between **Tonny J. Williamson** and **Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and _Sean Boyle_ _____ located at _7049 Century Pk East #90_ (collectively the "Recipient"). _LA, CA 90067_

**WHEREAS,** Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS,** Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE,** in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1. **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. **Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2. **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3. **Recipient Obligations.** The Recipient covenants and warrants to:

   (a)  protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

   (b)  not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

Page 1 of 4

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)     immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)     fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)     be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.     **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)     prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)     reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.     **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.     **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.    **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.    **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.    **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.    **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.    **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.    **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

Page 3 of 4

05/30/2018  18:47    3098357801                    SPOLAR                              PAGE  05/05

14.    **Severability.**  Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15.    **Effect of Facsimile and Photocopied Signatures.**  This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16.    **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17.    **Jurisdiction/Venue.**  The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

    **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

DISCLOSING PARTY

**Tonny J. Williamson**

**Jerry Spolar**

RECIPIENT

Print Name: _____
Position: _____

Print Name: _____
Position: _____

# EXHIBIT H

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT AND NONDISCLOSURE AGREEMENT** (the "Agreement"), dated as of ___JUNE 1_____, 20_18_ ("Effective Date"), is between **Tonny J. Williamson** and **Jerry Spolar** with an address of 528 W. Jackson, Macomb, Illinois 61455 (collectively the "Disclosing Party"), and ___KRISTEN BURNS_____ located at _23.5 E 45th ST, NY NY 10017_, (collectively the "Recipient").

**WHEREAS,** Disclosing Party is revealing Confidential Information, as defined herein, to Recipient; and

**WHEREAS,** Recipient desires to assure that the Confidential Information shall not be disclosed to others.

**NOW, THEREFORE,** in consideration of the foregoing premises, and the mutual covenants contained herein, Disclosing Party and Recipient hereby agree as follows:

1.    **Confidential Information.** In connection with the viewing, studying and disclosure of an Abraham Lincoln Photograph and related photographs, information, images, presentations, and documents (the "Purpose"), Disclosing Party may reveal to Recipient, or Recipient may otherwise receive access to, Confidential Information, as defined herein. Recipient shall use the Confidential Information solely for the Purpose and shall not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of the Disclosing Party. **Recipient shall take all steps necessary to protect the secrecy of the Confidential Information, which shall include, without limitation, not copying, photographing, recording, reproducing, recreating, disclosing, or divulging the Confidential Information.**

2.    **Definition of Confidential Information.** The definition of "Confidential Information" means all non-public, proprietary or confidential information relating to Disclosing Party's photograph of Abraham Lincoln and all proprietary research, documents, writings, photographs, images, and evidence related to such photograph of Abraham Lincoln; the history of such photograph; and all other related items and materials.

3.    **Recipient Obligations.** The Recipient covenants and warrants to:

(a)   protect and safeguard the confidentiality of all such Confidential Information with at least the same degree of care as the Recipient would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care;

(b)   not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than the Purpose, or otherwise in any manner to the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c)  immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d)  fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e)  be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4.  **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a)  prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b)  reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5.  **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6.  **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.    **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.    **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.    **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.    **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.    **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.    **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

05/30/2018 18:47 3098367801 SPOLAR PAGE 05/05

14. **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15. **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16. **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17. **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

DISCLOSING PARTY

Tonny J. Williamson


RECIPIENT

Print Name: KRISTEN BURNS
Position: EXECUTIVE PRODUCER, HISTORY


Jerry Spolar

Print Name: _____
Position: _____

Page 4 of 4

# EXHIBIT I

the Disclosing Party's detriment, including without limitation, to copy, photograph, record, reproduce, or recreate the Confidential Information;

(c) immediately notify the Disclosing Party of any unauthorized disclosure of Confidential Information or other breaches of this Agreement by the Recipient or its authorized representatives;

(d) fully cooperate with the Disclosing Party in any effort undertaken by the Disclosing Party to enforce its rights related to any such unauthorized disclosure; and

(e) be responsible for any breach of this Agreement caused by Recipient or any of its authorized representatives.

4. **Required Disclosure.** Any Disclosure by the Recipient or its authorized representatives of any of the Disclosing Party's Confidential Information pursuant to applicable federal, state, local law, regulation or a valid order issued by a court or governmental agency of competent jurisdiction (a "Legal Order") shall be subject to the terms of this Section. Prior to making any such disclosure, the Recipient shall provide the Disclosing Party with:

(a) prompt written notice of such requirement so that the Disclosing Party may seek a protective order or other remedy; and

(b) reasonable assistance in opposing such disclosure or seeking a protective order or other limitations on disclosure.

If, after providing such notice and assistance as required herein, the Recipient remains subject to a Legal Order to disclose any Confidential Information, the Recipient shall disclose, and, if applicable, shall require its authorized representatives or other persons to whom such Legal Order is directed to disclose, no more than that portion of the Confidential Information which, on the advice of the Recipient's legal counsel, such Legal Order specifically requires and shall use commercially reasonable efforts to obtain assurances from the applicable court or agency that such Confidential Information will be afforded confidential treatment.

5. **Title and Retention of Intellectual Property.** The Disclosing Party shall retain the title to all of its property, Confidential Information, and tangible and intangible property that may be produced as a result of such property and Confidential Information. The Disclosing Party shall also retain any and all intellectual property rights in its Confidential Information and disclaims any grant of a license to the Recipient.

6. **Return or Destruction of Confidential Information.** Upon the termination of this Agreement, or at the Disclosing Party's request at any time during the term of this Agreement, the Recipient and its Representatives shall promptly return to the Disclosing Party all materials, whether in written, electronic or other form or media, of the Disclosing Party's Confidential Information. In addition, the Recipient shall also destroy all notes created by the Recipient or its

authorized representatives and certify in writing to the Disclosing Party that notes have been destroyed.

7.    **Indemnification.** The Recipient shall jointly and severally defend, indemnify, and hold harmless the Disclosing Party, its affiliates, and their respective shareholders, officers, directors, employees, agents, successors, and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by the Recipient or any of its authorized representatives.

8.    **Remedies.** The Recipient acknowledges that money damages might not be a sufficient remedy for any breach or threatened breach of this Agreement by the Recipient or its Representatives. Therefore, in addition to all other remedies available at law (which the Disclosing Party does not waive by the exercise of any rights hereunder), the Disclosing Party shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach or threatened breach, and the Recipient hereby waives any requirement for the securing or posting of any bond or the showing of actual monetary damages in connection with such claim. In the event that either Party institutes any legal suit, action, or proceeding against the other Party arising out of or relating to this Agreement, the prevailing Party in the suit, action, or proceeding shall be entitled to receive in addition to all other damages to which it may be entitled, the costs incurred by such Party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

9.    **Benefit and Burden.** This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their successors and permitted assigns.

10.    **Amendments and Waiver.** No amendment, modification, restatement or supplement of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the party against whom that waiver is sought to be enforced.

11.    **Counterparts.** This Agreement may be executed in counterparts and by the different parties in separate counterparts, each of which when so executed shall be deemed an original and all of which taken together shall constitute one and the same agreement.

12.    **Captions and Headings.** The captions and headings contained in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

14. **Severability.** Should any clause, sentence, paragraph, subsection, Section or Article of this Agreement be judicially declared to be invalid, unenforceable or void, such decision will not have the effect of invalidating or voiding the remainder of this Agreement , and the parties agree that the part or parts of this Agreement so held to be invalid, unenforceable or void will be deemed to have been stricken by the parties, and the remainder will have the same force and effectiveness as if such stricken part or parts had never been included herein.

15. **Effect of Facsimile and Photocopied Signatures.** This Agreement may be executed in several counterparts, each of which is an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts. A copy of this Agreement signed by one party and faxed to another party shall be deemed to have been executed and delivered by the signing party as though an original. A photocopy of this Agreement shall be effective as an original for all purposes.

16. **Governing Law.** This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

17. **Jurisdiction/Venue.** The parties irrevocably submits to the personal jurisdiction of any Illinois court, over any claim arising out of or relating to this Agreement and irrevocably agrees that any and all such claims may be heard and determined in such Illinois court, in and for McDonough County; and irrevocably waives, to the fullest extent permitted by applicable law, any objection it may now or hereafter have to the venue in any proceeding being brought in a court in the Circuit Court of McDonough County, Illinois.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**DISCLOSING PARTY**

Tonny J. Williamson

**RECIPIENT**

Print Name: _____ Paul Jagowski
Position: _____ Jagowski

_____

Jerry Spolar

Print Name: _____
Position: _____

# EXHIBIT J

**EXHIBIT TO 1ST AMENDED COMPLAINT**

Schiff
Hardin

Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL  60606

T 312.258.5500
F 312.258.5600

schiffhardin.com

David C. Blickenstaff
(312) 258.5637
dblickenstaff@schiffhardin.com

August 2, 2019

Whitny Braun
7102 Rio Flora Place
Downey, CA  90241-2028
whitny@whitnybraun.com

Unrealistic Ideas, LLC
4303 W. Verdugo Avenue, Unit 101
Burbank, CA  91505

**Re:**    **Demand To Cease and Desist Disclosure of Confidential Information**

To Whom It May Concern:

Our firms represent Tonny J. Williamson and Jerald A. Spolar, respectively.  The purpose of this correspondence is to remind you of your continuing obligations under your Nondisclosure Agreement with Dr. Williamson and Dr. Spolar, a copy of which we have attached to this letter (the "NDA").

Under the NDA, Dr. Williamson and Dr. Spolar agreed to share with you certain confidential information related to their glass plate photograph of Abraham Lincoln (the "Ambrotype").  In return for receiving this information, you agreed that you would "not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of" Dr. Williamson and Dr. Spolar.  The NDA defines "Confidential Information" to mean "all non-public, proprietary or confidential information relating to [the Ambrotype] and all proprietary research, documents, writings, photographs, images and evidence" related to the Ambrotype and its history.

You appear to have disclosed Confidential Information in violation of this agreement.  Specifically, it appears that you have been in contact with Larry Davis and/or his attorney and that you disclosed Confidential Information as part of preparing an affidavit for use in a lawsuit he filed.  Furthermore, our client has learned that you have posted certain articles and news clippings under the user name WhitnyBraun69 on a public website, www.newspapers.com.  These articles reflect Dr. Spolar and Dr. Williamson's research, work product, and intellectual property, which they shared with you under the NDA.  By disclosing this Confidential Information to the public, you have violated the agreement.


*Schiff* Hardin

Whitny Braun
Unrealistic Ideas, LLC
August 2, 2019
Page 2

Dr. Williamson and Dr. Spolar take seriously protecting the Confidential Information and ensuring compliance with the NDA you signed. Accordingly, they demand that you immediately cease and desist from any further disclosure of the Confidential Information, including to people identified on the list of contacts Dr. Williamson and Dr. Spolar provided to you. Please take down the postings on www.newspapers.com along with any other public postings, and please promptly retract any other dissemination of the Confidential Information.

Dr. Williamson and Dr. Spolar reserve all of their rights and remedies against you, and any person or entity that might induce your breach of, or otherwise interfere with, your duties to Dr. Williamson and Dr. Spolar.

Please contact us if you have any questions regarding this letter.

Yours truly,

David C. Blickenstaff
Counsel for Tonny J. Williamson

/s/ Steven A. Wakeman
Steven A. Wakeman
Counsel for Jerald A. Spolar

Attachment

BUCHALTER   **EXHIBITS TO COMPLAINT**
A PROFESSIONAL CORPORATION
IRVINE

# EXHIBIT K



A T T O R N E Y S   A T   L A W
4450 N Prospect Rd, Peoria Heights, IL 61616 • (309) 723-8585 • dmerkley@merkleyshields.com

January 21, 2020

Whitny Braun
7102 Rio Flora Place
Downey, CA  90241-2028
whitny@whitnybraun.com

    Re:    Demand to Cease and Desist Disclosure of Confidential Information

To Whom It May Concern:

    I am an attorney writing on behalf of Dr. Jerry Spolar and Dr. Tonny Williamson. The purpose of this correspondence is to remind you of your continuing obligations under your Nondisclosure Agreement with Dr. Williamson and Dr. Spolar, a copy of which we have attached to this letter (the "NDA").

    Under the NDA, Dr. Williamson and Dr. Spolar agreed to share with you certain confidential information related to their glass plate photograph of Abraham Lincoln (the "Ambrotype"). In return for receiving this information, you agreed that you would "not disclose or permit access to Confidential Information to others, except with the specific prior written authorization of" Dr. Williamson and Dr. Spolar. The NDA defines "Confidential Information" to mean "all non-public, proprietary or confidential information relating to [the Ambrotype] and all proprietary research, documents, writings, photographs, images and evidence" related to the Ambrotype and its history. Further, if you have maintained any notes or documents relating to the glass plate ambrotype of Abraham Lincoln or the tutorials of night wet-plate photography or use of magnesium in night photography, please return those items to my office as required pursuant to your agreement with Dr. Spolar and Dr. Williamson.

    We have learned through sworn testimony that Dr. Spolar's and Dr. Williamson's Confidential Information has been disclosed for purposes of filming a production that we understand is to be aired on the Discovery Channel. The disclosure of this Confidential Information is a direct violation of the NDA and subjects the disclosing parties to possible damages and injunctions. Further, pursuant to the NDA, you have an obligation to return all notes and documents received or created regarding the Confidential Information. Please return all such documents to Dr. Williamson and Dr. Spolar by mailing them to my office.

    Dr. Williamson and Dr. Spolar take seriously protecting the Confidential Information and ensuring compliance with the NDA you signed. Accordingly, they demand that you immediately cease and desist from any further disclosure of the Confidential Information, including to people identified on the list of contacts Dr.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
**EXHIBITS TO COMPLAINT**

Williamson and Dr. Spolar provided to you.  Please halt production, airing, or other publication of any Confidential Information, and please promptly retract and refrain from any other dissemination of the Confidential Information.

Dr. Williamson and Dr. Spolar reserve all of their rights and remedies against you, and any person or entity that might induce your breach of, or otherwise interfere with, your duties to Dr. Williamson and Dr. Spolar.

If you have any questions, comments, or would like to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

MERKLEY & SHIELDS, LLC

Dennis E. Merkley
dmerkley@merkleyshields.com

Attachment

Cc: Discovery Communications, Inc. – Legal Department
   One Discovery Place
   Silver Spring, MD 20910

# EXHIBIT L

From: dmerkley@merkleyshields.com
Subject: Re: Abraham Lincoln Ambrotype - Dr. Tonny Williamson and Dr. Jerry Spolar
Date: April 9, 2020 at 1:07 PM
To: Leah Montesano Leah_Montesano@discovery.com

Dear Ms. Montesano,

Thank you for your response and the information you provided. Though I don't anticipate it, if I have any further questions, I will reach out to you directly.

Thanks,

Dennis E. Merkley
Merkley & Shields, LLC
4450 N Prospect Rd
Peoria Heights, IL 61616
Phone: (309) 723-8585
Fax: (309) 760-0435

On Apr 9, 2020, at 11:24 AM, Leah Montesano <Leah_Montesano@discovery.com> wrote:

Dear Mr. Merkley:

I write on behalf of Discovery, Inc. in response to your email below to Sean Boyle. Please direct all future correspondence regarding this matter to me.

Discovery will not confirm or deny the existence of any planned Discovery projects or programs before they are publicly announced. I can, however, confirm that Mr. Boyle has not been involved in the project you describe below. Mr. Boyle has not been involved in any way in "filming a production regarding the ambrotype and possibly violating non-disclosure agreements and possibly infringing upon Dr. Williamson's and Dr. Spolar's copyright interests."

I trust this response addresses your concerns. Please let me know if you have any additional questions.

Best,
Leah Montesano

**Leah C. Montesano | Vice President, Litigation**
Discovery, Inc. | 8403 Colesville Road | Silver Spring, MD 20910
Office: 240.662.3998 | Cell: 301.346.1536

---

**From:** dmerkley@merkleyshields.com <dmerkley@merkleyshields.com>
**Sent:** Friday, April 3, 2020 6:04:06 AM
**To:** Sean Boyle <Sean_Boyle@discovery.com>
**Subject:** Abraham Lincoln Ambrotype - Dr. Tonny Williamson and Dr. Jerry Spolar

Dear Mr. Boyle,

I represent Dr. Tonny Williamson and Dr. Jerry Spolar. As you may recall, you met Dr. Williamson and Dr. Spolar in 2018 regarding an ambrotype, glass-plate image, believed to depict Abraham Lincoln after being shot at Ford's Theater. At that meeting, you, along with others, signed a non-disclosure agreement. Unfortunately, in 2019, a replevin lawsuit was filed in Adams County, Illinois. The Court froze the ambrotype in a bank

BUCHALTER **EXHIBITS TO COMPLAINT**
A PROFESSIONAL CORPORATION
IRVINE

safe-deposit box pending the outcome of the case.

During our investigation of the case and through the discovery process, we have learned that the Plaintiff in that lawsuit has been involved with filming a production regarding the ambrotype and possibly violating non-disclosure agreements and possibly infringing upon Dr. Williamson's and Dr. Spolar's copyright interests. The film crew for that production made several statements that the production was set to air on the Discovery Channel. Obviously, I do not know the truth or veracity of those statements, which is why I am reaching out to you.

Can you confirm that the production is or is not going to be broadcast by Discovery or some affiliate? I am happy to schedule a brief telephone call to more fully and properly discuss this if you would like.

I look you forward to hearing from you in this regard. Thank you for your time and attention to this matter.

Dennis E. Merkley
Merkley & Shields, LLC
4450 N Prospect Rd
Peoria Heights, IL 61616
Phone: (309) 723-8585
Fax: (309) 760-0435

BUCHALTER
A Professional Corporation
Irvine

**EXHIBITS TO COMPLAINT**